IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**LILLIE HARDINE**                                                                   **PLAINTIFF**

**V.**                                                 **CIVIL ACTION NO. 4:19-CV-147-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                            **DEFENDANT**

## FINAL JUDGMENT

Plaintiff Lillie Hardine filed suit under 42 U.S.C. § 1383(c) for judicial review of the unfavorable decision of the Commissioner of Social Security regarding an application for disability insurance benefits and a period of disability. Docket 1. The parties have consented to entry of final judgment by the United States Magistrate Judge under 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Docket 11. The court, having reviewed the record, the administrative transcript, the briefs of the parties, the applicable law and having heard oral argument, finds that the Commissioner's decision is not supported by substantial evidence and will be reversed.

## FACTS AND PROCEDURAL HISTORY

On January 30, 2017, Lillie Hardine filed her application for disability benefits. After the application was denied at the lower levels, a hearing was held before an Administrative Law Judge ("ALJ") on June 5, 2018. The ALJ issued an unfavorable decision on December 27, 2018, and the Appeals Council denied review. The case is now before this court on appeal.

The plaintiff raises three issues on appeal: 1) whether the ALJ relied on erroneous VE testimony regarding the jobs that she could perform; 2) whether the ALJ erred by failing to order a consultative examination; and 3) whether the ALJ erred in assessing the treating physician's opinion.

## **LAW AND STANDARD OF REVIEW**

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process. The burden rests upon the claimant throughout the first four steps of this five

step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant must prove he is not currently engaged in substantial gainful activity. Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . .." At step three, the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work. If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he can perform other work. 20 C.F.R. § 404.1520 (2019). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Muse,* 925 F.2d at 789.

## **DISCUSSION**

At step five of the sequential evaluation process, the ALJ relied on vocational expert (VE) testimony and found the plaintiff could perform the jobs of carding machine operator (17,759 jobs nationally), escort driver (18,677 jobs nationally), and addresser (9,293 jobs nationally). Docket 7 at 75-76. The plaintiff argues the ALJ erroneously relied on the VE's testimony that she could perform the job of an addresser, a job the plaintiff argues is obsolete. As a result, the plaintiff contends the ALJ failed to establish the existence of a significant number of jobs that she can perform in the national and regional economy. In support of this argument, the plaintiff cites a 2011 "Occupational and Medical-Vocational Claims Review Study"

commissioned by the Social Security Administration identifying jobs which "might be obsolete" based on the frequency at which they are cited in step five denial cases, including the job of addresser. *See* Mark Trapani and Deborah Harkin, *Occupational and Medical-Vocational Claims Review Study*, SSA, May 2011, https://www.ssa.gov/oidap/Documents/PRESENTATION--TRAPANI%20AND%20HARKIN--OIDAP%2005-04-11.pdf. The study provides that "[i]t is doubtful that these jobs, as described in the DOT, currently exist in significant numbers in our national economy." *See also Read v. Comm'r, Soc. Sec.*, 2016 WL 2610117 (D. Md. May 6, 2016) (holding job of addresser is "patently obsolete") (citing *Cunningham v. Astrue*, 360 Fed. Appx. 606 (6th Cir. 2010)).

Whether work exists in the national economy depends on whether "it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. § 404.1566(a); 42 U.S.C.A. § 423(d)(2)(A). Moreover, "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy'" and will not be the basis for a finding of not disabled. 20 C.F.R. § 404.1566(b). It is not enough that there exist somewhere jobs which the plaintiff could perform; job opportunities must exist in the general area in which the applicant lives. *Butler v. Flemming*, 288 F.2d 591, 595 (5th Cir. 1961).

In evaluating job availability, the Fifth Circuit has held that the determination is not a nationwide test but instead, the Commissioner must consider the matter of "reasonable availability of jobs within the geographical areas which the claimant would normally be expected to consider if regularly in the labor market." *Gardner v. Smith*, 368 F.2d 77, 83 (5th Cir. 1966); *Celebrezze v. Kelly*, 331 F.2d 981, 982 (5th Cir. 1964); *Odom v. Gardner*, 277 F. Supp. 41, 46 (S.D. Ala. 1967) (maintaining that the nationwide test is "unacceptable to the Fifth Circuit").

Without evidence of available jobs in the geographical area in which a claimant would normally be expected to compete in the labor market, the Commissioner's burden at step five is not relieved. *Tigner v. Gardner*, 356 F.2d 647, 651 (5th Cir. 1966).

In the present case, the VE provided a total of 45,729 jobs. In its brief, the government argues and cites from numerous jurisdictions that such numbers are sufficient. *See, e.g., Pekrul v. Barnhart,* 153 F. App'x 329, 331 (5th Cir. 2005) (finding 5,983 jobs in Texas and 79,000 jobs nationally significant). However, the plaintiff provides authority that while 50,000 jobs may be sufficient, 18,000 jobs nationally are not enough. *See Lirley v. Barnhart,* 124 F. App'x 283, 283-84 (5th Cir. 2005) and *Walker v. Shalala,* 1994 WL 171202, at *2 (S.D. Tex. Jan 6, 1994). There is also authority from outside the Fifth Circuit that provides varying numbers. *See., e.g., Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (finding 36,000 jobs nationally significant); *Guttierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 529 (9th Cir. 2014) (25,000 jobs nationally significant, but "a close call").

In other words, there is little consensus as to what is "significant" and what is not, and that makes good sense when one considers the various economies and job markets around the country. For instance, while the job markets in Oklahoma City may be comparable to those in Toledo, the job market in Southern California is certainly not comparable to that in Northern Mississippi. Indeed, in our rural and exceptionally poor region of the country, it seems incumbent on the court to make certain the VE provides a number of jobs available in the *regional* economy as well as the national one. When this court is given only a number of jobs in the national economy, that may not provide any information at all about what exists for someone struggling to work in Mound Bayou or Kossuth, Mississippi. Local numbers are especially important when the national numbers are themselves "a close call." As mentioned, here the VE

gave 45,729 jobs nationally, but 9,293 of those jobs were for an addresser, a job the DOT describes as "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing." While this job is currently listed in the DOT, it is certainly obsolete, which leaves 36,436 jobs nationally – a close call. And when this court sees the combination of a close call nationally and no jobs provided locally, it does not have substantial evidence to affirm the ALJ's decision.

Finally, the court concludes that plaintiff did not waive her argument regarding the vocational expert's testimony by failing to raise it at the administrative hearing. The Fifth Circuit has held that a claimant cannot scan the record for "implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT" as it relates to the requirements of a particular occupation and a plaintiff's ability to perform those requirements. *Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir. 2000). However, the issue here is not whether Ms. Hardine could perform the jobs provided by the VE but rather whether the jobs provided even existed in numbers sufficient for her to find them. Again, in a case like the present one where national numbers may be a "close call," the government must show there is substantial evidence to support their contention that jobs are actually available in significant numbers in the regional economy.

Because the court is remanding this case based on errors committed in the VE's assessment of available jobs, it will not evaluate the other issues raised by the plaintiff. The Commissioner's decision is reversed and remanded for a rehearing of the plaintiff's application under the fourth sentence of § 405(g).

**SO ORDERED**, this the 1st day of September, 2020.

/s/ David A. Sanders
**UNITED STATES MAGISTRATE JUDGE**